*E-Filed 11/24/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MSGI SECURITY SOLUTIONS, INC.,

Plaintiff,

v.

HYUNDAI SYSCOMM CORPORATION, et al.,

Defendants.

_____/

No. C 09-03330 RS

**ORDER RE MOTIONS TO DISMISS**

## I. INTRODUCTION

Plaintiff MSGSI Security Solutions, Inc. alleges it entered into a set of complex business transactions with defendants, believing that it was doing business with subsidiaries of the international business conglomerate based in Korea formerly known as Hyundai, and now known as Hynix.   MSGSI contends the transactions were permeated with fraud, and that it lost millions of dollars as a result.   Defendants move to dismiss the complaint, arguing that various claims are not adequately pleaded.  Additionally, defendant Hyundai Syscomm, Inc., ("HSI"), a Korean corporation, moves to dismiss and quash service, contending that it is not subject to personal service and was not properly served.   For the reasons set out below, the complaint will be dismissed, with

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  leave to amend.  HSI's jurisdictional motion will be denied, without prejudice to it being renewed

2  after the parties have had the opportunity to conduct limited discovery on the jurisdictional issue.

3

4

5                                          II.  BACKGROUND

6          MSGI describes itself as a "leading provider of proprietary security products and services to

7  commercial and governmental organizations throughout the world."  The complaint alleges that in

8  August of 2006, MSGI was contacted by defendant Jack Choe, who introduced himself as

9  representing "Hyundai Syscomm", "the Korean Company that had invented CDMA technology for

10 cellular telephones."  In communications and negotiations that followed, Choe repeatedly used the

11 name "Hyundai Syscomm" to refer to HSI and to defendant Hyundai Syscomm, Corporation

12 ("HSC"), a California corporation "interchangeably."  Choe advised MSGI that HSC was the

13 American "affiliate" of HSI, that they were in essence "one and the same company," and that they

14 were both subsidiaries of the Hyundai/Hynix family of companies.

15         MSGSI ultimately entered into a written contract with HSC, whereby HSC agreed that it and

16 its "Affiliates" would utilize MSGSI as a subcontractor to perform services under various contracts

17 HSC had or would obtain.  HSC and MSGI also entered into another written contract whereby

18 MSGI was to sell 865,000 shares of its stock to HSC in exchange for certain licensing rights plus

19 $500,000.   At HSC's direction, MSGI issued the stock certificate not to MSGI, but to a company

20 called Anyuser, Inc., which was represented to be one of HSC's "affiliated companies." (MSGI

21 alleges it has since learned that HSC arranged for the stock to be transferred to Anyuser, Inc.

22 because it was deeply in debt to Anyuser.)  HSC paid an initial $200,000 under the stock agreement,

23 but withheld the balance.

24         As MSGI continued to discuss business dealings with Choe and other individual defendants,

25 Choe suggested that MSGI could perform subcontract work for defendants Apro Media Co., Ltd, a

26 Korean company, and its American affiliate Apro Media Corporation. MSGI was led to believe

27 there was no meaningful distinction between the two Apro entities.  MSGI then entered into a

28

                                               2

written agreement with the American Apro entity, based on representations that the Apro entities had an existing contract with Honeywell International from which MSGI could profit. Pursuant to that agreement, MSGI wired $2.5 million dollars to the Korean Apro entity.

MSGI subsequently received a "purchase order" from Apro and defendant RFMon, another "affiliated" company, calling for MSGI to supply equipment to four Apro venders. First, however, MSGI had to wire $500,000 to RFMon in Korea to obtain the equipment. MSGI did so, but when the equipment arrived, it was old, dusty, and much of it was defective. MSGI claims it since learned that Choe expressly told Apro to send MSGI "whatever junk it had lying around."

After MSGI raised "further complaints and doubts" about HSC and Apro, Choe suggested that directing subcontracting work to MSGI could be accelerated by involving defendants Hirsch Capital Corporation, which MSGI alleges is a private equity company that owns or controls the other entity defendants. MSGI agreed with Hirsch to accelerate its performance under the subcontract agreement, and further gave Hirsch the right to earn shares in MSGI. In persuading MSGI to agree to this arrangement, Hirsh allegedly misrepresented that it had valid and existing contracts with numerous federal agencies. MSGI thereafter wired an additional $2.5 million to RFMon in Korea, for additional equipment. That equipment was never delivered.

In February of 2008, as MSGI continued to complain about defendants' performance and non-payment of invoices, the American Apro entity issued a $3.8 million check to MSGI as payment in full of one invoice. Although the bank verified that there were adequate funds to cover the check when MSGI received it, it was returned unpaid for insufficient funds. Ultimately, this action ensued.

3

III. LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir.2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Furthermore, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).


IV. DISCUSSION

A.  Under General Insufficiency of the Allegations

Defendants characterize this dispute as involving nothing more than a failed business venture, and argue that at most MSGI might hold claims for breach of contract.  Assuming the truth of the factual allegations, it appears likely that MSGI may be able to state claims for something more than simple breach of contract, but the present complaint falls short of doing so, and even the

United States District Court
For the Northern District of California

1  count for breach of contract is confused.   The complaint follows a reasonably common practice of

2  setting out a chronological description of the facts, followed by relatively terse charging allegations

3  that incorporate those facts by reference and formulaically recite the elements of each claim.

4  Although it is possible to state a claim utilizing that structure, it requires a certain amount of care to

5  make it possible for defendants—and the court—to evaluate what charges are being made,

6  particularly in cases with multiple defendants, complex facts, and numerous claims.

7       Here, MSGI has set out 17 or more pages of general allegations untethered to any specific

8  claim.   The ten numbered "causes of action" are, with one exception, asserted against "all

9  defendants."   In some instances, it is plain that a particular cause of action is not properly asserted

10  against *all* defendants; for example there is nothing in the complaint that would support breach of

11  contract claims against individual defendants.   In other instances, the undifferentiated incorporation

12  of all the general allegations into each claim and the lumping together of the defendants renders it

13  impossible to determine whether the elements of each claim have been met as to *any* much less *all*

14  defendants.

15       Thus, while there may be nothing improper *per se* with the structure MSGI chose for its

16  complaint, its execution of that structure is deficient.   "[A] district court must retain the power to

17  insist upon some specificity in pleading before allowing a potentially massive factual controversy to

18  proceed." *Bell Atlantic v. Twombly*, 550 U.S. 544, 558 (2007).   It may be that, standing alone, some

19  of the claims presently state a claim against some of the defendants.   For example, as discussed at

20  the hearing, the RICO claims and the contract claims appear viable.   Nevertheless, because

21  amendment of the complaint is going to be necessary, MSGI should take the opportunity to clarify

22  the role of each defendant as well as which facts it believes support each claim.   With respect to the

23  claims sounding in fraud and under securities law, specificity in compliance with Rule 9(b) of the

24  Federal Rules of Civil Procedure is required.

25

26

27

28

B.  <u>Defendant Garst</u>

Defendant Garst has moved separately to dismiss, arguing that the allegations made against him specifically are so minimal that there is no basis for liability at all.  The complaint appears to implicate Garst in the alleged wrongdoing more deeply than his motion acknowledges, but for the same reasons set out above, MSGI must present its claims against him more clearly and with greater specificity.

C.  <u>Purported Settlement</u>

Defendants contend that MSGI settled and released the claims it now is seeking to assert. Whether or not the purported settlement encompassed the claims now being made appears to be a matter of dispute, but in any event the existence and scope of any settlement is outside the pleadings and not a proper subject for judicial notice.  Accordingly, those arguments do not support dismissal under Rule 12(b)(6).

D.  <u>Jurisdiction</u>

There appears to be little dispute that at one point in time HSI was part of the Hyundai/Hynix conglomerate and that it was a duly-formed Korean entity with ongoing business operations, including some business presence in the United States.  Evidence submitted by MSGI, however, indicates that at least in the view of Hyundai/Hynix, HSI essentially went defunct by 2005, well before the events giving rise to this litigation.   The Chairman of Hynix Semiconductor, Inc. informed MSGI that Hynix sold its interest in HSI to a third party in 2002, and that the third party thereafter sold the "international business unit" of HSI to yet another third party in 2004.  The "remainder" of HSI apparently continued to operate in Korea, but purportedly was declared bankrupt in 2005, albeit without complete liquidation up to this point.

6

United States District Court
For the Northern District of California

1    The Hynix chairman further reported to MSGI that the former CEO of HSI, defendant

2    Samuel Lee, "fled to the United States" after HSI went bankrupt, where he apparently formed HSC.[1]

3    Hyundai/Hynix disavows any connection between itself and HSC.

4    In its motion to dismiss for lack of personal jurisdiction, HSI attempts to separate itself from

5    HSC; it contends that MSGI dealt exclusively with HSC and that it cannot be held liable merely on

6    the happenstance of having a similar name.  The problem with this argument is that it glosses over

7    the allegations and the evidence that the individual defendants purported to be acting both on behalf

8    of HSC *and* HSI.  It might very well turn out, of course, that the individual defendants had neither

9    actual nor ostensible authority to act on HSI's behalf, but HSI has not made such a showing at this

10   juncture.[2]

11   As discussed at the hearing, the present record is insufficient to determine whether a sound

12   basis for exercising jurisdiction over HSI exists.  Accordingly, MSGI is hereby granted leave to

13   conduct limited, targeted discovery on the jurisdictional issue.  For example, such discovery may

14   take the form of one or more Rule 30(b)(6) depositions of representatives of HSC and/or a request

15   for production of documents.  The Court declines to set more specific guidelines for the discovery at

16   this juncture, but expects the parties to cooperate in ensuring that it remains appropriately limited

17   and that it is completed in a timely fashion.   Accordingly, the motion to dismiss for lack of

18

19

20

---

21   [1]  Assuming the information provided by Hynix Semiconductor is true, and that HSI was sold to a third party prior to the events alleged in the complaint, it would appear that Hynix is not in a

22   position to know definitively whether or not the individual defendants were authorized by HSI to act on its behalf.

23

24   [2]  Although the burden of establishing jurisdiction is on plaintiff, HSI must rebut the showing MSGI has made that the individual defendants purported to represent HSI.  If the persons with

25   actual authority to control the affairs of HSI are other than the individual defendants here, there likely is a conflict in interest between HSI and the individual defendants, because HSI needs to

26   show that defendants essentially misappropriated its name.   If, on the other hand, the individual defendants had authority to act for HSI, then their dealings with MSGI are likely sufficient to create

27   personal jurisdiction over HSI in this action.

28

7

jurisdiction is denied, without prejudice to it being renewed upon completion of the jurisdictional

discovery.[3]

### V. CONCLUSION

Defendants' motions to dismiss for failure to state a claim are granted, with leave to amend

within 20 days of the date of this order.  HSI's motion to dismiss for lack of jurisdiction is denied,

without prejudice.

IT IS SO ORDERED.

Dated: 11/24/09

_____
RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

---

[3]  HSI's argument that it was not properly served appears to turn on whether or not the individual
defendants have the authority to act on behalf of HSC.

8